Paul R. CRAIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 36919.

Court of Criminal Appeals of Texas.

Oct. 7, 1964.

Rehearing Denied Nov. 25, 1964.

Second Motion for Rehearing Denied Jan. 13, 1965.

Jim S. Phelps, W. W. Kilgarlin, Fred W. Robinson, Houston, for appellant.

Frank Briscoe, Dist. Atty., Carl E. F. Dally and Jon N. Hughes, Gus J. Zgourides, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for murder; the punishment, death.

The testimony of the state shows that the appellant killed Warren Russell Crain, a boy, eleven months old, by choking and strangling him with his hands. Except for one deleted paragraph, appellant's voluntary written statement made to the officer on the day of the killing, and two notes written by appellant, all of which show the killing of the boy by appellant, were introduced in evidence without objection.

Relying on temporary insanity as his sole defense, the appellant entered a plea of not guilty. Testifying in his own behalf, the appellant admitted that he killed the boy by choking and strangling him, but stated that he (appellant) blacked out at the time and did not realize he was committing such act until it was over. He offered other testimony bearing on his defense of insanity.

█ The jury resolved the issue of insanity against the appellant, and the evidence is sufficient to support their verdict.

█ Appellant insists that the trial court erred in refusing his motion that he be examined at the expense of the state by a competent psychiatrist who was not connected with the prosecution.

There is no constitutional or statutory provision authorizing that such services be furnished by the county or state to a per-

son charged with crime. Ellzey v. State, 158 Tex.Cr.R. 604, 259 S.W.2d 211; Bush v. State, Tex.Cr.App., 353 S.W.2d 855.

■ It is contended that the trial court erred in ruling that if appellant introduced any part of his military record, the state would be permitted to introduce the remainder of such record, and again erred in refusing the offer of his military record to perfect his bill of exception.

The statement of facts on the main trial reveals that from a discussion between the court and counsel for both parties that the military record consisted of numerous reports and instruments.

The court stated that, as he understood the rule, if appellant introduced any part of the record, the state could offer any part or all of the remainder; that any action of the court was premature until the military record or a portion of it was offered in evidence; and that a bill of exception could be perfected if there was an objection followed by an adverse ruling. No offer was made by the appellant of all or any portion of his military record in evidence. In the absence of any offer in evidence of the military record, no error is shown.

■ It is insisted that the trial court erred in refusing to instruct the jury not to consider the prosecutor's questions as to whether appellant was discharged because he had been convicted of being absent without leave and for theft of an automobile while in the military service in Germany, even though appellant answered in the negative.

Following two questions regarding appellant's convictions for AWOL and automobile theft, request was made of the court to instruct the jury to disregard the questions as to whether convictions were the reasons for his discharge.

The cross-examination of the appellant was in part as follows:

"Q. (State) Isn't it true you were convicted as to—for theft and received four months and loss of pay for stealing a coat, a top coat, and a suit from a soldier while you were in Germany? You received four month and loss of pay from it?"

Appellant: "Objection. Its not in rebuttal."

The Court: "Sustain the objection. Put a time limit on it." * * *

"Q. When were you convicted of that by court martial and given four months and loss of pay for theft?"

"A. There was a question upon the theft that was involved."

"Q. You were convicted, weren't you?"

"A. I was convicted of a lesser, yes sir."

During the cross-examination of Dr. Sher he testified:

"Q. In your reports you have stated that the defendant told you he was court martialed for going AWOL and for theft of an automobile, is that correct?"

"A. That's what I have in my reports."

"Q. Could you have confused that with the theft of some clothes?"

"A. I suppose so but I don't think so. I think there's some pretty wide spread between clothes and an automobile. That's what he told me."

"Q. I agree there is a wide spread between the offense listed. He told you in 1959 he received a court martial for going AWOL and theft of an automobile?"

"A. That's correct."

In view of all the evidence, no error is shown by the refusal of the court to instruct the jury not to consider the questions about the former convictions.

■ Complaint is made of the use of the phrase "a person shall not be tried for an offense if he becomes insane" on the ground that it constitutes a comment on the weight of the evidence, thereby leading the jury to believe that appellant would not be on trial if he were insane.

From the court's charge on insanity and the findings to be made thereon by the jury, it appears that the phrase complained of did not mislead the jury, and that appellant's rights were fairly and adequately protected in the charge.

Complaint is made of the refusal of members of the jury, after they had been discharged, to talk with appellant's attorney, because they had agreed not to discuss what went on during their deliberations, on the ground that their agreement made it impossible to ascertain any jury misconduct.

■ There is no statutory authority requiring a disclosure by the members of the jury of the matters considered during their deliberations. The mere agreement of the jury not to discuss their deliberations is not alone sufficient to call for a reversal. Farrar v. State, 162 Tex. Cr.R. 136, 277 S.W.2d 114; Graves v. State, Tex.Cr.App., 382 S.W.2d 486, 1964.

■ The refusal of appellant's request to instruct the jury, in accordance with the provisions of Art. 2, Vernon's Ann.P.C., that the object of punishment is to suppress crime and reform the offender was not error, as it would constitute a comment on the weight of the evidence. White v. State, 165 Tex.Cr.R. 339, 306 S.W.2d 903.

■ The bills of exception contained in the transcript were timely filed with the clerk of the trial court. The bills were qualified by the trial judge and timely returned to the clerk. Appellant objected and excepted to such qualifications, and the exception was certified by the trial court, and no bystanders bills were filed. Therefore the bills cannot be considered. Willie v. State, 169 Tex.Cr.R. 393, 334 S.W.2d 159; English v. State, 170 Tex. Cr.R. 56, 338 S.W.2d 446.

The judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

MORRISON, Judge.

■ Appellant's court appointed counsel in forceful argument attacks our original opinion in two major respects. He complains of our failure to discuss his contention that the court erred in refusing his request to open and close the argument on the issue of insanity. Though we did fail to discuss this contention in appellant's case, we did dispose of this question in our opinion in Knoeppel v. State, Tex. Cr.App., 382 S.W.2d 493, decided the same day as appellant's case on original submission. We adopt by reference in the case at bar the reasons there stated for the disposition of this question.

He further focused his attack upon the last paragraph of our original opinion and takes us to task for not applying, as he says, the rule in Moore v. State, Tex.Cr. App., 380 S.W.2d 626. In Moore the trial judge certified that the following action was taken:

"The Court does not certify to the truthfulness of the contents therein but he does certify that they are only contentions of the Defendant."

On rehearing the majority held that "the Court's certificate in the bill constituted no action at all", therefore, no rule of procedure was announced in Moore. But here we do have *something* in that the court in his certificate referred to the record and, in effect, stated that if error is there presented he was bound thereby.

Another and far more important difference is that Moore did not bring himself within the rule announced in Willis v. State and English v. State, supra, whereas appellant did. In order to demonstrate that appellant's cause was in no wise injured by our adherence to the Willis and English rule, we will discuss appellant's contentions which were not covered by our original opinion. In the first paragraph hereof we have answered his fourth contention.

■ His fifth contention was that the court erred in overruling his challenge for cause to venirewoman Pancamo when she replied in the affirmative to the question, "If you find him sane and you find him guilty, you would still send him to the electric chair?" Prior to this question she had been informed that appellant was charged with killing his 11 months old child and that the only issue to be submitted for her decision was that of appellant's sanity. Under the circumstances her answer showed no prejudgment.

■ His sixth contention is that the court erred in overruling his challenge for cause to venirewoman Craig. After careful interrogation back and forth with slight variation in the responses, Mrs. Craig finally told the court that if she found the defendant to be of unsound mind by a preponderance of the evidence, she could find him not guilty and would be fair with anyone at anytime for any purpose.

■ His seventh contention was that the court erred in overruling his challenge for cause to venirewoman Bowdoin. She also had been informed that there would be no contest as to appellant's guilt once the State had made out its case. This being true, the sole issue for her decision was to be answered from a preponderance of the evidence, and we do not find her disqualified because she may have said that she would require an improper burden

of proof on an issue which was not contested.

His eighth contention was that the court erred in failing to grant him additional peremptory challenges after he had been forced to exercise his last challenge on a venireman who should have been removed for cause. This last venireman in question was Mr. Hoza, and his examination reveals no grounds for reversal.

■ His ninth contention was that one of the jurors had served under a false name and that the deputy sheriff in charge of the venire was informed of his true name before he was questioned on voir dire. The jury summons was addressed to Wallace Murphy at Murphy Wallace's address. Mr. Wallace appeared for service and notified the bailiff as to the mistake but was addressed as Mr. Murphy during the interrogation. The venireman, having told the bailiff that his names had been transposed, answered counsel's question without correcting them because he was often addressed as Mr. Murphy as well as Mr. Wallace and that his wife often answered when addressed as Mrs. Murphy. It appears to us that Mr. Wallace was acting in perfect good faith, and we perceive no injury from the above and will therefore not discuss the question of appellant's diligence.

■ His eleventh contention was that the court erred in not granting a new trial when it was discovered that juror Laing, in addition to his insurance business, had been an officer in the local Farm Bureau unit which had some three years prior to the instant trial been critical of the voting record of the Honorable Bill Kilgarlin, who was at that time a member of the Texas House of Representatives. On Laing's voir dire examination, when asked his type of business, he replied that he was an insurance agent. He was not asked any question concerning his activities in connection with the Farm Bureau. At the hearing on the motion for new trial, Attorney Kilgarlin testified at length about a breakfast

given by the local Farm Bureau at which his voting record in the House had been criticized and stated that after the trial he had talked to Laing over the telephone and Laing had told him that he remembered Attorney Kilgarlin's being at the breakfast. Laing, however, during his examination after the trial remembered the breakfast, but did not recall that Kilgarlin's record was discussed. Counsel was unable to establish any such prejudice against him personally as might have rendered Laing unacceptable as a juror.

His twelfth contention was that Article 616, Vernon's Ann.C.C.P., which provides for a challenge for cause in a capital case if the venireman has conscientious scruples against the infliction of the death penalty, is unconstitutional. We commend counsel for his studious approach to this problem, but we are forced to agree with the State that unless the Legislature in its wisdom abolishes the death penalty as possible punishment for crime, Section 11 of Article 616, supra, is essential in order that a death penalty verdict may be predictable.

The expert witnesses that he sought to call would be properly heard by a Legislative committee, but the court did not err in refusing to hear the witnesses because according to the duty of his office he was bound to follow the above Article. It would have been idle for him to have conducted an academic forum.

His fourteenth contention was that the court erred in not permitting him, by his interpretation of Article 2, Vernon's Ann.P.C., to interrogate the venire so as to inform them that if they inflicted the death penalty they would not be reforming the offender and therefore not following the law of Texas. Such an interpretation of the object of punishment in the field of criminal law would be at variance with the statutes authorizing the imposition of the death penalty.

His fifteenth contention was that the court erred in refusing to permit him to introduce evidence before the jury by expert witness who would express the opinion that the awarding of the death penalty does not deter or suppress crime. What we have said in connection with his twelfth contention is deemed a sufficient answer to this contention.

His last contention not heretofore discussed is that the court erred in denying his motion made prior to trial for a production among other things of "all written statements made by witnesses in connection with this case." The record reflects that a psychiatric report was made available to counsel. In all other respects the trial judge carefully followed the rules announced in Gaskin v. State, 172 Tex.Cr. App., 353 S.W.2d 467, and appellant has shown no injury.

Remaining convinced that this cause was properly decided originally, appellant's motion for rehearing is overruled.

WOODLEY, Presiding Judge (concurring).

The court's qualification to appellant's bills of exception reads:

"Each of the Defendant's foregoing Formal Bills of exception is qualified to the extent that any matter, facts, or conclusions of the Defendant set forth in each of the bills which are at variance from the facts shown in the official record in this case, as prepared by the court clerk and the court reporter, are not certified by me as true but are certified by me as being the contentions of the Defendant; and each of the bills as so qualified is approved and certified only insofar as it correctly states the matters as

172

they appear in the full and complete statement of facts in Question and Answer form and the official transcript both of which are filed in this case."

The qualification to Ormond Moore's bill reads:

"The foregoing Bill of Exceptions was presented to me in due time and was approved and ordered filed, subject to the following qualifications:

"The Court does not certify to the truthfulness of the contents therein but he does certify that they are only contentions of the Defendant."

Comparison of the qualification to appellant's formal bills with the qualification of Ormond Moore's bill manifests that if the latter "constituted no action at all," the same is true as to the qualification to appellant's bills.

If the court's qualification, or attempted qualification, of Ormond Moore's formal bill requires that such bill be treated as approved, the same is true as to appellant's formal bills of exception and there was nothing for the appellant to except to, or to agree or disagree with.

The Moore bill was treated by the majority as approved by the trial judge without qualification. Such holding was dicta. The result reached in the case before us demonstrates that the holding was wrong.

Appellant's formal bills of exception cannot be considered because the trial judge refused to approve them as filed and the appellant did not agree to his reasons, but excepted to his qualification. Art. 760d, Vernon's Ann.C.C.P. and cases cited under Note 3.

This appeal was properly disposed of on original submission, for which reason I concur in the overruling of appellant's motion for rehearing.