Rudy Ovalla CONVERSE, Appellant,

v.

The STATE of Texas, Appellee.

No. 37264.

Court of Criminal Appeals of Texas.

Jan. 6, 1965.

Rehearing Denied Feb. 17, 1965.

Evans & Egger, by Samuel L. Egger, San Antonio, for appellant.

J. Taylor Brite, Dist. Atty., Jourdanton, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is felony theft; the punishment, 8 years.

The indictment alleged the theft of an air impact wrench of the value of $160 from Milton Hurley, Jr.

The evidence shows: Hurley operated Hurley Auto Parts Store in Pleasanton and was a partner in the ownership of the business. Eddie Sanchez, Joe Gonzales, Jessie Fernandez and the appellant Converse resided in San Antonio where they had been seen together on prior occasions. On the afternoon of the date alleged in the indictment, the four were in Pleasanton.

Eddie Sanchez and three companions who were not identified visited Hurley's Store between 3:30 and 4 o'clock P. M. Sanchez, Gonzales and the appellant were identified as being in Western Auto Store in Pleasanton about 4 P. M.

About 5 P. M. Sanchez and Gonzales were in White's Auto Store and Fernandez was sitting in the driver's seat of a 1955 two tone green Mercury automobile which was parked across the street. When Sanchez and Gonzales left the store they went to the Mercury car and they drove away.

Minutes later Mr. Tisdale, owner of White's Auto Store, missed two Arvin Transistor Radios. Officers who were notified obtained a description of the automobile.

Deputy Sheriff Murray Potts, who was traveling toward Pleasanton from San Antonio, heard the radio report of the theft of two radios from White's Auto Store in Pleasanton, and a description of the automobile in which four suspects were fleeing toward San Antonio. He met such a car, traveling at 60 miles an hour, some 12 miles

from Pleasanton, pursued and stopped it about 5:45 P.M. Fernandez was driving the Mercury, Gonzales occupied the other front seat. Eddie Sanchez and the appellant were riding in the back seat.

Other officers soon arrived in response to Deputy Potts' message and the car and its passengers were searched.

Nothing was found on the person of the passengers, nor in the trunk or the inside of the Mercury, but when the hood was raised the officers found the two Arvin Transistor Radios which had been stolen from White's Auto Store in Pleasanton, and other stolen property which had not been missed, including a 7 inch skill saw and two cartons of spark plugs identified as belonging to White's Auto Store, and the air impact wrench which Mr. Hurley later identified as that which was a part of his stock at Hurley Auto Parts before the visit of Sanchez and his three companions, and which he testified were taken without his consent.

The court charged the jury on the law of principals, and submitted the case as one of circumstantial evidence. Appellant contends that the evidence is insufficient to sustain the conviction and points out that he was not in exclusive possession of the stolen wrench; that there was no evidence identifying him as having been in the Hurley Auto Parts Store or White's Auto Store; no evidence to show that any property was stolen from Western Auto Store, and no evidence to connect him with the theft of the property found under the hood other than the circumstance of his having been riding in the back seat of the car.

■ We overrule appellant's contention and find the evidence, viewed from the standpoint most favorable to the jury's verdict, sufficient to support the finding that appellant was a principal in the theft of the air impact wrench.

■ The facts and circumstances shown by the evidence are sufficient to support a finding by the jury that the visit of San-

chez and his companions to the auto parts stores in Pleasanton, on a pretended shopping expedition, was in fact for the purpose of acquiring merchandise by theft.

Fernandez drove the car. In each of the stores, Sanchez occupied the attention of the merchant, posing as a customer, and thereby furnished his companions the opportunity to take merchandise from another part of the store. He bought nothing and the jury was warranted in concluding that such was not his purpose.

At Hurley's Auto Parts Store Sanchez said he wanted to buy some *brake shoes* for a 1953 Roadmaster Buick; he wanted to see the brake shoes, which Mr. Hurley testified was "a very unusual practice." He occupied Mr. Hurley's time and attention for 15 or 20 minutes and then the four left without making any purchase.

At Western Auto Store Sanchez asked for a set of *brake shoes* "for a '57 Buick." Appellant was in the store while the salesman was trying to find such brake shoes and Sanchez said he wanted "a *muffler* for a '57." As Sanchez and Gonzales left, the appellant asked the salesman if they had a smaller *solder gun* than the one he was standing near when the salesman approached him. Appellant left and the salesman saw him about 10 minutes later walking side by side with Gonzales on the sidewalk across the street.

At White's Auto Store Sanchez talked to a salesman and to the proprietor while Gonzales "prowled around over the store."

Less than two and a half hours after Sanchez and his three companions came to Hurley's Store and less than an hour after Sanchez and Gonzales were in White's Auto Store, Sanchez, Gonzales, Fernandez and the appellant were fleeing away from Pleasanton at a speed of 60 miles per hour in the car in which Fernandez was waiting. They had traveled some 14 miles and had the stolen radios, spark plugs, skill saw and air impact wrench "stashed" under the hood.

The hypothesis that the appellant was a mere passenger in the car, and not a party to the thefts, was not one which the jury was bound to accept as reasonable.

We overrule the contention that the state relied alone upon the joint possession by appellant and his companions of the recently stolen wrench.

The court did not err in admitting evidence regarding the other stolen property found in the car and the evidence as to the conduct of the appellant and his companions on their visit to Pleasanton. Such proof was relevant and was not rendered inadmissible because it tended to prove the commission of another or other offenses. 55 Tex.Jur.2d 468, Sec. 204; Compton v. State, 148 Tex.Cr.R. 204, 186 S.W.2d 74.

The arrest of the occupants and the search of the automobile in flight from the scene of the thefts was admissible. Arts. 215 and 325 C.C.P.

Appellant's formal bill of exception No. 1 relates to the reading of the indictment to the defendant by the district attorney to which he pleaded not guilty. This occurred in the jury's presence and hearing and was followed immediately by the reading of the indictment to the jury by the district attorney who stated: "to which the defendant has pled not guilty."

Appellant contends that such proceeding violated Art. 491 C.C.P. which provides: "There shall be no arraignment of a defendant except upon an indictment for a capital offense."

We are cited to no case and know of none where this Court has reversed a conviction because a defendant in a non-capital felony case was arraigned.

The bill of exception does not certify that appellant did not plead to the indictment. We must presume that he did. Art. 847 C.C.P.

No error appearing, the judgment is affirmed.